**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| Sayuri Inoa-Martinez, Leonel Feng, Josmael Pichardi Lede and David Valecillo | : <br> : <br> : <br> : <br> : |
| Individually, and on behalf of all others similarly situated as Class Representatives, | : <br> : <br> : |
| Plaintiffs, | : |
| v. | : <br> : <br> : <br> : |
| Living Room Restaurant and Lounge 2.0 Inc., Living Room Restaurant and Lounge, Inc., Ali Zulqurnain, and Julia Malkova | : <br> : <br> : <br> : |
| Defendants. | : <br> : |

Case No.: 22-cv-6722

CLASS AND COLLECTIVE ACTION

## COMPLAINT

## I.  PRELIMINARY STATEMENT

1.  Plaintiffs Sayuri Inoa-Martinez, Leonel Feng, Josmael Pichardi Lede and David Valecillo (collectively "Plaintiffs") were employed as servers by Defendants at their upscale restaurant and lounge located in Brooklyn, NY but were rarely, if ever, paid any wages and only ever received a portion of the tips to which they were entitled.  When certain of the Plaintiffs sought legal assistance to remedy these and other legal violations, they were threatened by Defendants and fired.

2.  Plaintiffs bring this Collective and Class Action on behalf of themselves and the scores of other individuals who currently work and/or previously worked as servers in Defendants' restaurant business and were not paid their lawfully owed wages and tips.

1

## II.     JURISDICTION AND VENUE

3.     Plaintiffs allege violations of the minimum wage, overtime and tip retention provisions of the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the minimum wage, overtime, spread of hours, tip retention and hiring and wage notice provisions of New York Labor Law Article 19 § 650 *et seq.* ("NYLL").

4.     Plaintiffs bring their FLSA claims individually and on behalf of other similarly situated current and former employees of Defendants under the collective action provisions of the FLSA, 29 U.S.C. § 216(b).

5.     Plaintiffs bring their NYLL claims individually and on behalf of a class of persons pursuant to Rule 23(a), 23(b)(1) and (b)(3) of the Federal Rules of Civil Procedure.

6.     Plaintiffs Josmael Pichardi Lede and David Valecillo allege violations of the anti-retaliation provisions of the FLSA and the NYLL.

7.     This Court has subject matter jurisdiction pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*, 29 U.S.C. § 216; and 28 U.S.C. §§ 1331 and 1337.

8.     With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 in that the state law claims derive from a common nucleus of operative fact and are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

9.     Venue is appropriate in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b), as the events giving rise to this claim occurred primarily within this judicial district.

## III.     THE PARTIES

10.     Plaintiff Sayuri Inoa-Martinez is an adult individual and resident of the State of New York, Queens County.  Her consent to sue is attached here as Exhibit A.

11.     Plaintiff Leonel Feng is an adult individual and resident of the State of New York, Kings

County.  His consent to sue is attached here as Exhibit B.

12.     Plaintiff Josmael Pichardi Lede is an adult individual and resident of the State of New

York, Kings County. His consent to sue is attached here as Exhibit C.

13.     Plaintiff David Valecillo is an adult individual and resident of the State of New York,

Kings County.  His consent to sue is attached here as Exhibit D.

14.     At all times relevant to this Complaint, Plaintiffs were employees of Defendants as that

term is defined by

a.   the FLSA, 29 U.S.C. § 203(e)(1), and

b.   the NYLL § 190,

15.     At all times relevant to this Complaint, Plaintiffs were employees engaged in commerce

or the production of goods for commerce, and/or were employees in an enterprise

engaged in commerce or the production of goods for commerce within the meaning of 29

U.S.C. § 203 *et seq*.

16.     Upon information and belief, Defendant Living Room Restaurant and Lounge 2.0 Inc.

{"Living Room") is a domestic corporation doing business in the State of New York as a

restaurant and bar at 178 Avenue U, Brooklyn, NY 11223 and/or is the successor

corporation to Defendant Living Room Restaurant and Lounge Inc.

17.     Upon information and belief, Defendant Living Room Restaurant and Lounge Inc. is a

domestic corporation doing business in the State of New York as a restaurant and bar at

178 Avenue U, Brooklyn, NY 11223 and/or is the predecessor corporation to Defendant

Living Room Restaurant and Lounge 2.0 Inc.

18.     Upon information and belief, Defendant Ali Zulqurnain is a resident of the State of New

York.

19.  Upon information and belief, Ali Zulqurnain is an owner and manager of Defendant Living Room Restaurant and Lounge 2.0 Inc.

20.  At all times relevant to the Complaint,  Ali Zulqurnain had the power, and did in fact exercise such power, to hire and fire Living Room employees, set employees' wages and work schedules, retain time and/or wage records, and otherwise control the terms and conditions of employment of all Living Room employees, including Plaintiffs.

21.  At all times relevant to the Complaint, Ali Zulqurnain had the power, and did in fact exercise such power, to create pay practices and policies for the corporate defendants.

22.  At all times relevant to the Complaint, Ali Zulqurnain had the power to stop any illegal pay practices at Living Room.

23.  Upon information and belief, Defendant Julia Malkova is a resident of the State of New York.

24.  Upon information and belief, Julia Malkova is an owner and general manager of Living Room.

25.  At all times relevant to the Complaint,  Julia Malkova had the power, and did in fact exercise such power, to hire and fire Living Room employees, set employees' wages and work schedules, retain time and/or wage records, and otherwise control the terms and conditions of employment of all Living Room employees, including Plaintiffs.

26.  At all times relevant to the Complaint, Julia Malkova had the power, and did in fact exercise such power, to create pay practices and policies for the corporate defendant.

27.  At all times relevant to the Complaint, Julia Malkova had the power to stop any illegal pay practices at Living Room.

28.  At all times relevant to the Complaint, the individual defendants actively managed,

supervised, and directed the business affairs and operation of Living Room, and acted directly and indirectly in relation to its employees.

29.    At all times relevant to the Complaint, Living Room was an employer of each of the Plaintiffs as that term is defined by

a.    the FLSA, 29 U.S.C. § 203(d),

b.    NYLL § 190,

30.    At all times relevant to the Complaint, Living Room Restaurant and Lounge, Inc. was an employer of each of the Plaintiffs as that term is defined by

c.    the FLSA, 29 U.S.C. § 203(d),

d.    NYLL § 190

31.    At all times relevant to the Complaint, Ali Zulqurnain was an employer of each of the Plaintiffs as that term is defined by

a.    the FLSA, 29 U.S.C. § 203(d),

b.    NYLL § 190,

32.    At all times relevant to the Complaint, Julia Malkova was an employer of each of the Plaintiffs as that term is defined by

a.    the FLSA, 29 U.S.C. § 203(d),

b.    NYLL § 190,

33.    Upon information and belief, Living Room grossed more than $500,000 per year in revenue for each of the past five (5) calendar years.

34.    Upon information and belief, Living Room is an enterprise engaged in commerce.

35.    Upon information and belief, during the course of their employment each of the Plaintiffs handled goods shipped to Defendants in interstate commerce including but not limited to

alcohol and produce.

## IV.    STATEMENT OF FACTS

36.    Defendants own and operate the Living Room which is a profitable restaurant, bar, lounge and catering business.

37.    At all times relevant to the Complaint, Defendants employed approximately 9-10 individuals as servers at any given time.

38.    Defendants never provided their servers, including Plaintiffs, with any written statement, in English or Spanish, at the time of their hiring, setting out their rates of pay and other information as required by the New York Labor Law.

39.    At the outset of their respective periods of employment or soon thererafter, each Plaintiff was informed by Defendants that two weeks of their pay would be withheld as a "deposit."

40.    Defendants' employees, including Plaintiffs, routinely worked in excess of forty (40) hours per week, i.e. "overtime hours," and over a spread of hours exceeding ten (10) hours in a day.

41.    During the course of their respective periods of employment, Plaintiffs came to understand that they, and all other servers employed by Defendants, were generally not paid any hourly wages but only ever received a portion of their earned gratuities, sometimes as "points" or a percentage of the "tip pool."

42.    Defendants never explained to their employees verbally or in writing, including Plaintiffs, that they would be claiming a "credit" from the minimum wage for tips, how the amount of tips would impact Plaintiffs' pay from Defendants, and that all tips received by an employee must be retained by that employee except for a valid tip pooling arrangement.

6

43.     Because, on a regular basis, Defendants only paid Plaintiffs a portion of their tips, failed to pay them any additional amount as wages and failed to provide the required written notice for a tip credit allowance, Defendants failed to pay Plaintiffs at least the then applicable federal and state minimum wages for each hour worked.

44.     To the extent that Defendants used Plaintiffs' earned gratuities to pay them an undisclosed hourly wage, Defendants thereby stole Plaintiffs' earned gratuities.

45.     Defendants failed to pay Plaintiffs and their other employees at a rate of one and one half their regular hourly rate of pay for every hour worked over 40 in a workweek.

46.     The amount of tips that employees, including Plaintiffs, actually received in any given week was less than and did not correspond to the amount of tips earned by Plaintiffs.

47.     Defendants did not turn over all of the tips to the employees for whom they were intended, and instead routinely retained tips for themselves.

48.     Defendants improperly took money from the tip pool which included Plaintiffs' earned gratuities and assigned percentages of the pool to managers, "the house" and to the owners of the corporate Defendants.

49.     Defendants did not provide Plaintiffs and their other employees, with any written wage statements accurately setting forth their total pay, the time period for which the pay was intended to compensate employees, the employees' hours during that time period, or the employees' rates of pay as required by NYLL.

50.     On all occasions when Plaintiffs worked more than ten (10) hours in a single day, Defendants failed to pay Plaintiffs for an additional hour of work as required by law.

51.     Plaintiffs frequently did not receive an uninterrupted meal break of at least 20 minutes during their workday

52.     Upon information and belief, Defendants did not maintain a timekeeping system and did not contemporaneously record Plaintiff's actual work hours or the work hours of other servers.

53.     Defendants imposed an additional 20% charge on all customer bills which was labeled as a "service charge" on the bill.  The menu provided to customers states: "For your convenience, Service charge of 20% will be added to all checks.  No refund or exchange." All bills, except for take-out orders, included at the bottom the statement "Suggested Additional Tip:" followed by percentage ranging from 2% to 7%. Defendants' credit card receipts included another line item labeled "additional tip" to be filled in by the customer.

54.     Defendants nowhere otherwise notified customers in writing whether the "service charge" was to be paid to servers or other employees or retained by the restaurant for other purposes.  Customers were led to believe that the 20% charge was a tip for Defendants' employees and that, as stated on Defendants' menu and bills, any other gratuity from customers was an "additional tip."

55.     When customers occasionally complained about the 20% "service charge", Defendants would sometimes remove it from their bill.

**SAYURI INOA-MARTINEZ**

56.     Plaintiff Sayuri Inoa-Martinez was employed by Defendants as a server for approximately 3 weeks beginning in May 2022.

57.     At the outset of her employment, Plaintiff Sayuri Inoa-Martinez was informed by a manager that she would not be paid by the hours she worked but instead would only receive payment based on her tips.

58.     Plaintiff Sayuri Inoa-Martinez was also told by a manager that her first week of pay would be withheld in case she failed to give a 2 week notice prior to quitting.

59.     Defendants did withhold Plaintiff Sayuri-Martinez' first regular week of pay which was given to her only after she announced her resignation approximately 10 days after the completion of her first regular week of work.

60.     Plaintiff Sayuri Inoa-Martinez worked from approximately 6:00 p.m. to between 2:30 and 3:00 a.m. on Thursdays and Fridays and from approximately 6:00 p.m. to 4:00 a.m. on Saturdays.

61.     Plaintiff Sayuri Inoa-Martinez was only ever purportedly paid hourly wages for her work on one day.  For all other days of work, she only ever received an unexplained portion of the tip pool.

62.     The amount of pay Plaintiff Sayuri Inoa-Martinez received from Defendants was less than the total amount of tips given to her by her customers.

63.     Plaintiff Sayuri Inoa-Martinez was not permitted to see the tip pool records.

64.     Upon information and belief, in any given shift, the total amount of money distributed to Plaintiff Sayuri Inoa-Martinez and other servers, busboys, runners and any other employee eligible to be included in a tip pool was significantly less than the total amount of gratuities collected.

**LEONEL FENG**

65.     Plaintiff Leonel Feng was employed by Defendants as a server from approximately March 2021 to January 2022.

66.     Plaintiff Leonel Feng was also told by Defendants that his first two weeks of pay would be withheld in case he failed to give a 2 week notice prior to quitting.

67.   Defendants did withhold Plaintiff Leonel Feng's first two weeks of pay and returned half
      of it on or about October 2021 and a portion of the remaining "deposit" when his
      employment ended.

68.   From approximately March 2021 to October 2021, Plaintiff Leonel Feng typically
      worked Tuesday through Thursday from approximately 6:00 p.m. to 2:30 a.m. and Friday
      through Saturday from approximately 5:00 p.m. to 2:30 a.m.

69.   From approximately October 2021 to January 2022, Plaintiff Leonel Feng typically
      worked Tuesdays from approximately 11:00 a.m. to 2:30 pm., Wednesday through Friday
      from 11:00 a.m. to 6:00 p.m., and Saturday from 11:00 a.m. to 2:00 a.m.

70.   Plaintiff Leonel Feng typically worked more than 40 hours per week.

71.   Upon information and belief, Plaintiff Leonel Feng was never paid any wages for his
      work and only ever received a portion of the tip pool.

72.   On or about the beginning of his employment, Plaintiff Leonel Feng was informed by
      Defendant Julia Malkova that he would be paid "based on tips, not by hours"

73.   From the beginning of his employment to on or about August 2021, Plaintiff Leonel Feng
      was instructed to place all of his earned cash tips (not including 20% service charges paid
      in cash) into a tip jar and to provide all signed credit card receipts to management.  At the
      end of each shift, the servers' pooled cash tips (not including 20% service charges paid in
      cash) were counted up and divided between servers, busboys, bartenders and the hookah
      assistant.  This payment did not include any earned gratuities that had been paid by credit
      card.

74.   During this same time period, Plaintiff Leonel Feng received an additional weekly cash
      payment from Defendants which Defendants informed him was his share of the credit

card tip pool.

75.     On or about August 2021, Defendants convened a meeting of all server staff and stated that they were going to change the payment system.  Defendants explained that now all cash and credit card tips would be pooled every night and servers would receive their portion of the tip pool in cash at the end of each shift.  Again, no wages would be paid. On Friday and Saturday nights, the "house" would keep 10% of the tip pool.  From every shift, a portion of the tip pool would be taken to pay an administrative office assistant. Managers would take percentages from the tip pool every shift as well.

76.     On several occasions, Plaintiff Leonel Feng managed to view Defendants' written records and observed that all of his pay, and all of the pay received by other servers, was derived from the tip pool and that no one was paid any wages apart from this "tip money." Plaintiff Leonel Feng also observed that Defendants deducted funds from the tip pool as described above.

**JOSMAEL PICHARDI LEDE**

77.     Plaintiff Josmael Pichardi Lede was employed by Defendants as a server first for approximately one month in the Fall of 2020 and then again from approximately March 2022 to September 2022.

78.     During his first period of employment, Plaintiff Josmael Pichardi Lede typically worked 4-5 days per week from 5:00 p.m. to approximately 2:30 a.m.

79.     During his first period of employment, Plaintiff Josmael Pichardi Lede was only ever paid a portion of his earned tips.  He was never paid any wages.

80.     During his first period of employment, Plaintiff Josmael Pichardi Lede was paid in cash at the end of every shift and received only a portion of his earned tips for the shift.

11

81. From on or about March 2022 to on or about July 2022, Plaintiff Josmael Pichardi Lede typically worked Sunday, Tuesday, Wednesday and Thursday from 4:00 a.m. to approximately 2:30 a.m. and on Fridays and Saturdays from 6:00 p.m. to approximately 4:00 a.m.

82. From on or about July 2022 to the end of his employment, Plaintiff Josmael Pichardi Lede typically worked 4- 5 days per week.  During this time period, on weekdays he worked from 6:00 p.m. to approximately 2:30 a.m. and on weekends from 6:00 pm to approximately 4:00 a.m.

83. Plaintiff Josmael Pichardi Lede typically worked more than 40 hours per week.

84. Upon information and belief, Plaintiff Josmael Pichardi Lede was never paid any wages for his work and only ever received a portion of the tip pool.

85. From on or about March 2022 to on or about July 2022, Plaintiff Josmael Pichardi Lede was instructed to place all of his earned cash tips (not including 20% service charges paid in cash) into a tip jar and to deliver all signed credit card receipts to management. Plaintiff Josmael Pichardi Lede was paid cash at the end of each shift with no explanation of the amount received and was never paid any wages for his work.

86. On or about July 2022, Defendants convened a meeting of their server staff, including Plaintiff Josmael Pichardi Lede. Defendant Julia Malkova stated that all servers would now be paid on a weekly basis.  Defendant Julia Malkova further stated that servers could now retain their own "cash tips" (not including 20% service charges paid in cash) each shift, but not credit card tips.  The weekly payment to Plaintiff Josmael Pichardi Lede was significantly less than the amount of his earned credit card gratuities.

87. On or about July 2022 meeting, Plaintiff Josmael Pichardi Lede was also told by

Defendants that two weeks of pay would be withheld in case he failed to give a 2 week notice prior to quitting. Defendants did withhold his next two weeks of payment from the credit card tip pool and never returned this money to him.

88.   On or about September 30, 2022, Defendant Ali Zulqurnain approached Plaintiff Josmael Pichardi Lede and stated in substance "What do you want from me? You're talking to a lawyer? You're on a group chat with David? This bitch Sayuri only worked here for one week." Defendant Julia Malkova then played an audio recording which appeared to include Plaintiff David Valicello discussing his legal complaint against Defendants. Defendant Ali Zulqurnain then placed his finger immediately in front of Plaintiff Josmael Pichardi Lede's face, gestured violently and said "I'm going to fuck you up." Defendant Ali Zulqurnain threatened to call the police and told Plaintiff Josmael Pichardi Lede not to return to work until he provided certain paperwork.

89.   Plantiff Josmael Pichardi Lede was not paid anything for his last two weeks of work.

**DAVID VALECILLO**

90.   Plaintiff David Valecillo was employed by Defendants as a server from approximately May 2021to September 2022.

91.   Plaintiff David Valecillo was told by Defendants that his first two weeks of pay would be withheld in case he failed to give a 2 week notice prior to quitting. Defendants did withhold his first week of pay and only provided it to him about one year later.

92.   From the beginning of his employment, Plaintiff David Valecillo typically worked six days per week. On five of those days, he typically worked from 6:00 p.m. to approximately 2:30 a.m.and on one day, usually Saturday, he worked from 6:00 p.m. to approximately 4:00 a.m  Also, he typically worked a double shift 2 days per week.  On

those days, he would start work at 11:00 a.m. and work continuously through his evening shift.

93.  Plaintiff David Valecillo typically worked more than 40 hours per week.

94.  Upon information and belief, Plaintiff David Valecillo was never paid any wages for his work and only ever received a portion of the tip pool.

95.  Before July 2022, Plaintiff David Valecillo was paid cash on a daily basis with no explanation of the amount received.  During this time period, Plaintiff David Valecillo and all other served were required to relinquish deposit all cash tips into the tip jar.  Upon information and belief, the daily payments to servers came exclusively from this cash tip pool and no credit card tips were re-distributed to servers.

96.  On or about July 2022, Defendants convened a meeting of their server staff, including Plaintiff David Valecillo, and Defendant Julia Malkova stated that all servers would now be paid on a weekly basis.  Defendant Julia Malkova further stated that servers could now retain their own "cash tips" each shift and that the additional weekly payment would come from the "tip pool."

97.  On or about August 2022, Plaintiff David Valecillo's employment arrangement with Defendants was altered such that he began working five days per week from 11:00 a.m. to 6:00 p.m. and one day per week from 11:00 a.m. to 4:00 a.m. For his days shifts, he was paid a flat rate of $140 per day plus his cash tips (not including 20% service charge paid in cash) but did not receive any portion of his earned gratuities paid by credit card. For his night shift, he retained his cash tips (not including 20% service charge paid in cash) and was paid an unexplained portion of the credit card tip pool.

98.  On or about September 29, 2022, Defendant Ali Zulqurnain accused Plaintiff David

Valecillo of speaking to an attorney regarding his workplace rights. Plaintiff David

Valecillo stated that he and others were exercising their legal rights to claim unpaid

wages. Defendants Ali Zulqurnain and Julia Malkova together threatened him.

Defendants stated: "I know where you live", "I'm going to send you out of here, to the

other world.", "you're a sissy" and then fired him and threatened to call the police.

Defendants stated "you're going to go to jail right now."  Defendant Ali Zulqurnain

physically blocked the door, preventing him from leaving the restaurant.

99.     For his last two weeks of work, Plaintiff David Valecillo was only ever paid his cash tips

(not including 20% service charge paid in cash).

**DEFENDANTS' CONDUCT TOWARD ALL PLAINTIFFS**

100.    Defendants were aware or should have been aware that applicable law required them to

pay employees such as Plaintiffs at least the then applicable minimum wage for all hours

worked, to pay employees such as Plaintiffs premium pay for all hours worked in excess

of forty (40) per week, to pay employees such as Plaintiffs an additional hour at

minimum wage for workdays that spanned more than 10 hours and to pay employees

such as Plaintiffs all of their earned gratuities.

101.    Defendants knowingly paid employees, including Plaintiffs, less than the applicable

minimum wage for each hour worked and failed to pay time and a half for overtime hours

and a premium for spread of hours and illegally retained Plaintiffs' and all other servers'

earned tips including the automatic 20% "service charge" which constitutes a tip.

102.    Upon information and belief, at all times during the period of Plaintiffs' employment by

Defendants, approximately 9-10 other individuals were simultaneously employed by

Defendants in similar capacities and were subject to the same nonpayment of lawful

wages in violation of Federal and State law as described in the preceding paragraphs. The duration of employment for each individual varied but there was frequent turn over. Plaintiffs estimate that, in total, at least 150 individuals were employed by Defendants in similar capacities at the same job site and subject to the same pay, hiring notice and wage statement practices during the past six years.

## V.   FLSA COLLECTIVE ACTION ALLEGATIONS

103.   Plaintiffs Sayuri Inoa-Martinez, Leonel Feng, Josmael Pichardi Lede and David Valecillo bring their FLSA minimum wage, overtime and illegal tip retention claims, the First, Second and Third Causes of Action, as a collective action under the collective action provision of the FLSA as set forth in 29 U.S.C. § 216(b) on behalf of themselves and the "FLSA Collective," defined as:

> All current and former non-managerial employees who worked for Defendants as servers at the Living Room at any time within the three (3) years prior to the filing of this case and the date of final judgment in this matter.

104.   The current and former employees described above are situated similarly to Plaintiffs within the meaning of 29 U.S.C. § 216(b) and, therefore, the First, Second and Third Causes of Action herein may be brought and maintained as an "opt-in" collective action.

105.   Upon information and belief, the names, contact information, and dates of employment of the proposed FLSA Collective members are available from Defendants, and notice of and an opportunity to join this lawsuit should be provided to all potential opt-in Plaintiffs as soon as possible.

## VI.   NYLL CLASS ACTION ALLEGATIONS

106.   Plaintiffs Sayuri Inoa-Martinez, Leonel Feng, Josmael Pichardi Lede and David Valecillo bring their NYLL claims, the Fourth through Ninth Causes of Action, as a class action

under Rules 23(a), (b)(1), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of

themselves and "the NYLL Class," defined as:

> All current and former non-managerial employees who worked for Defendants at
> the Living Room as servers at any time within the six (6) years prior to the filing
> of this case and the date of final judgment in this matter.

107. The persons in the NYLL Class identified above are so numerous that joinder of all

members is impracticable.  Although the precise number of such persons is unknown, and

facts on which the calculation of that number are presently within the sole control of

Defendants, upon information and belief, there are approximately 150 members of the

NYLL Class during the six years prior to the filing of this lawsuit.

108. There are questions of law and fact common to the NYLL Class which predominate over

any questions affecting only individual members, in that Class members worked in

similar job capacities at a single restaurant and were subject to the same pay and

recordkeeping practices by Defendants.

109. The claims of the named Plaintiffs are typical of the claims of the NYLL Class, as they

worked in similar job capacities to the individuals they seek to represent, and were paid

by Defendants in the same manner.

110. The named Plaintiffs understand their responsibility to fairly and adequately protect the

interests of the NYLL class and agree to do so.

111. A class action is superior to other available methods for the fair and efficient adjudication

of the controversy, which involves a substantial number of low-wage workers who lack

the financial resources to vigorously prosecute a lawsuit in federal court against corporate

defendants.

112. The Defendants have acted or refused to act on grounds generally applicable to the

NYLL Class.

113.   Questions of law and fact common to the collective and class action as a whole include, but are not limited to the following:

    a.    Whether each of the Defendants is an employer under the FLSA and/or the NYLL;

    b.    Whether Defendants unlawfully failed and continue to fail to pay minimum wage and overtime compensation in violation of FLSA;

    c.    Whether Defendants' violations of the FLSA were willful;

    d.    Whether Defendants unlawfully failed and continue to fail to pay minimum wage, overtime, and spread of hours compensation in violation of NYLL;

    e.    Whether Defendants failed to provide legally required hiring notices and wage statement notices, in violation of NYLL;

    f.    Whether Defendants illegally retained tips earned by servers in violation of the FLSA and/or NYLL; and

    g.    Whether Defendants' 20% "service charge" constitutes a tip.

### VII.   CAUSES OF ACTION

### <u>FIRST CAUSE OF ACTION</u>

**Fair Labor Standards Act Minimum Wage Violations**
**On Behalf of Plaintiffs and the FLSA Collective**

114.   Plaintiffs Sayuri Inoa-Martinez, Leonel Feng, Josmael Pichardi Lede and David Valecillo and any members of the FLSA Collective who file consents to sue in this action restate, re-allege and incorporate by reference all of the preceding allegations as if fully set forth herein.

115.    Defendants willfully failed to timely pay Sayuri Inoa-Martinez, Leonel Feng, Josmael

Pichardi Lede and David Valecillo and members of the FLSA Collective at least the

applicable federal minimum wage for each hour worked, in violation of 29 U.S.C. § 206

*et seq*.

116.    Due to Defendants' FLSA violations, Plaintiffs Sayuri Inoa-Martinez, Leonel Feng,

Josmael Pichardi Lede and David Valecillo and members of the FLSA Collective are

entitled to recover from Defendants, jointly and severally, their unpaid minimum wage

compensation, an additional equal amount as liquidated damages, reasonable attorneys'

fees, and costs of the action, pursuant to 29 U.S.C. § 216 (b).

## SECOND CAUSE OF ACTION

### Fair Labor Standards Act Overtime Wage Violations
### On Behalf of Plaintiffs and the FLSA Collective

117.    Plaintiffs Leonel Feng, Josmael Pichardi Lede and David Valecillo and any members of

the FLSA Collective who file consents to sue in this action restate, re-allege and

incorporate by reference all of the preceding allegations as if fully set forth herein.

118.    Defendants willfully failed to timely pay Plaintiffs and members of the FLSA Collective

overtime compensation at rates not less than one and one-half times the regular rate of

pay for each hour worked in excess of forty (40) hours in a workweek, in violation of 29

U.S.C. § 207 (a)(1).

119.    Due to Defendants' FLSA violations, Plaintiffs and members of the FLSA Collective are

entitled to recover from Defendants, jointly and severally, their unpaid overtime

compensation, an additional equal amount as liquidated damages, reasonable attorneys'

fees, and costs of the action, pursuant to 29 U.S.C. § 216 (b).

## THIRD CAUSE OF ACTION

**Fair Labor Standards Act – Illegal Retention of Tips**
**On Behalf of Plaintiffs and the FLSA Collective**

120.    Plaintiffs Sayuri Inoa-Martinez, Leonel Feng, Josmael Pichardi Lede and David Valecillo
and any members of the FLSA Collective who file consents to sue in this action restate,
re-allege and incorporate by reference all of the preceding allegations as if fully set forth
herein.

121.    Defendants willfully and unlawfully retained tips left by customers, which were intended
as gratuities for Plaintiffs and members of the FLSA Collective.

122.    Due to Defendants' FLSA violations, Plaintiffs and members of the FLSA Collective are
entitled to (a) the difference between the cash wages paid by Defendants and the
applicable federal minimum wage, and (b) the return of their tips.

**FOURTH CAUSE OF ACTION**

**New York Labor Law – Minimum Wage**
**On Behalf of Plaintiffs and the NYLL Class**

123.    Plaintiffs Sayuri Inoa-Martinez, Leonel Feng, Josmael Pichardi Lede and David Valecillo,
on behalf of the NYLL Class restate, re-allege and incorporate by reference all of the
previous allegations as if fully set forth herein.

124.    Defendants willfully violated Plaintiffs' and NYLL Class members' rights by failing to
timely pay them the applicable New York State minimum wage for each hour worked.

125.    Due to Defendants' New York Labor Law violations, Plaintiffs Sayuri Inoa-Martinez,
Leonel Feng, Josmael Pichardi Lede and David Valecillo and members of the NYLL
Class members are entitled to recover from Defendants, jointly and severally, their unpaid
minimum wages, liquidated damages, reasonable attorneys' fees, costs of the action, and
interest, pursuant to NYLL §§ 198, 663, and 681.

**FIFTH CAUSE OF ACTION**

**New York Labor Law – Overtime Wage**
**On Behalf of Plaintiffs and the NYLL Class**

126. Leonel Feng, Josmael Pichardi Lede and David Valecillo, on behalf of the NYLL Class restate, re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

127. Defendants willfully violated Plaintiffs' and NYLL Class members' rights by failing to timely pay them overtime compensation at rates not less than one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

128. Due to Defendants' New York Labor Law violations, Plaintiffs and members of the NYLL Class are entitled to recover from Defendants, jointly and severally, their unpaid overtime compensation, liquidated damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198, 663, and 681.

## SIXTH CAUSE OF ACTION

**New York Labor Law – Spread of Hours**
**On Behalf of Plaintiffs and the NYLL Class**

129. Plaintiffs Sayuri Inoa-Martinez, Leonel Feng, Josmael Pichardi Lede and David Valecillo, on behalf of the NYLL Class restate, re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

130. Defendants willfully violated Plaintiffs' and Class members' rights by failing to pay them an additional hour of pay at the minimum wage rate for days on which their workday spanned more than ten (10) hours or on which they worked split shifts.

131. Due to Defendants' New York Labor Law violations, Plaintiffs and members of the NYLL Class are entitled to recover from Defendants, jointly and severally, their unpaid spread of hours compensation, liquidated damages, reasonable attorneys' fees, costs of

the action, and interest, pursuant to NYLL §§ 198, 663, and 681.

## SEVENTH CAUSE OF ACTION

**New York Labor Law – Illegal Retention of Tips**
**On Behalf of Plaintiffs and the NYLL Class**

132.   Plaintiffs Sayuri Inoa-Martinez, Leonel Feng, Josmael Pichardi Lede and David Valecillo, on behalf of the NYLL Class restate, re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

133.   Defendants willfully and unlawfully retained tips left by customers, which were intended as gratuities for Plaintiffs and members of the NYLL Class in violation of NYLL 196-d.

134.   Due to Defendants' NYLL violations, Plaintiffs and members of the NYLL Class are entitled to (a) the difference between the cash wages paid by Defendants and the applicable New York State minimum wage for New York City, and (b) the return of their tips.

## EIGHTH CAUSE OF ACTION

**New York Labor Law – Unlawful Deductions**
**On Behalf of Plaintiffs and the NYLL Class**

135.   Plaintiffs Sayuri Inoa-Martinez, Leonel Feng, Josmael Pichardi Lede and David Valecillo, on behalf of the NYLL Class restate, re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

136.   Defendants willfully violated the rights of Plaintiffs and members of the NYLL Class by deducting monies from their wages for a purpose which was not primarily for their benefit and without their voluntary written authorization and without written notice of all terms and conditions of the payment and/or its benefits, in violation of the NYLL § 193 and its regulations.

137.    Due to Defendants' New York Labor Law violations, Plaintiffs and members of the NYLL Class are entitled to recover from Defendants, jointly and severally, their unlawfully deducted wages, liquidated damages, reasonable attorneys' fees, costs of the action, and interest, pursuant to NYLL §§ 198, 663, and 681.

## NINTH CAUSE OF ACTION

**New York Labor Law – Failure to Provide Hiring Notices and Wage Statements
On Behalf of Plaintiffs and the NYLL Class**

138.    Plaintiffs Sayuri Inoa-Martinez, Leonel Feng, Josmael Pichardi Lede and David Valecillo, on behalf of the NYLL Class restate, re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

139.    Defendants failed to supply Plaintiffs and members of the NYLL Class a hiring notice as required by NYLL § 195, in English or in any other language, containing all of the following information: their rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; their hourly rate or rates of pay and overtime rate or rates of pay; the regular pay day; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer.

140.    Defendants failed to supply Plaintiffs and members of the NYLL Class with an accurate statement of wages as required by NYLL § 195, containing all of the following information: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay; the number of

hours worked, including overtime hours worked; deductions; and net wages.

141.   Due to Defendants' NYLL violations, for each day that Defendants failed to provide a proper notice at the time of hiring from February 26, 2015 through the present, Plaintiffs and members of the NYLL Class are entitled to damages of $50 per day, up to a total of $5,000 per class member, as provided for by NYLL § 198, as well as reasonable attorneys' fees and costs.

142.   Due to Defendants' NYLL violations, for each workweek that Defendants failed to provide a proper wage statement from February 26, 2015 through the present, Plaintiffs and members of the NYLL Class are each entitled to damages of $250 per day, or a total of $5,000 per class member, as provided for by NYLL § 198, as well as reasonable attorneys' fees and costs.

## TENTH CAUSE OF ACTION

### FLSA – Retaliation

143.   Plaintiffs Josmael Pichardi Lede and David Valecillo restate, re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

144.   By the actions set forth above, among others, Defendants have retaliated against Plaintiffs Josmael Pichardi Lede and David Valecillo, in violation of 29 U.S.C. § 215(a)(3).

145.   Defendants terminated Plaintiffs Josmael Pichardi Lede's and David Valecillo's employment because each made a complaint about Defendants' violations of the FLSA.

146.   As a result of Defendants' illegal retaliation, Plaintiffs Josmael Pichardi Lede and David Valecillo have suffered damages, including lost compensation, mental anguish, and emotional distress.

## ELEVENTH CAUSE OF ACTION

### NYLL - Retaliation

147.   Plaintiffs Josmael Pichardi Lede and David Valecillo restate, re-allege and incorporate by reference all of the previous allegations as if fully set forth herein.

148.   By the actions set forth above, among others, Defendants have retaliated against Plaintiffs Josmael Pichardi Lede and David Valecillo, in violation of N.Y. Lab. L. § 215(1)(a).

149.   Defendants terminated Plaintiffs Josmael Pichardi Lede's and David Valecillo's employment because each complained to them that their conduct violated the New York Labor Law.

150.   As a result of Defendants' illegal retaliation, Plaintiffs Josmael Pichardi Lede and David Valecillo have suffered damages, including lost compensation, mental anguish, and emotional distress.

### IX.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

151.   Designate this action as a collective action on behalf of the proposed FLSA Collective pursuant to FLSA § 216(b) and order prompt issuance of notice to all similarly situated members of the FLSA Collective, apprising them of the pendency of this action and permitting them to assert timely FLSA claims by filing written consents;

152.   Toll the statute of limitations on the claims of all FLSA Collective members from the date of filing of this Complaint until the FLSA Collective has been provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their right to opt in as plaintiffs;

153.  Certify this case as a class action pursuant to Fed. R. Civ. Proc. 23(b)(1) and (3) and order prompt issuance of notice to all members of the NYLL apprising them of the pendency of this action and how it affects their rights;

154.  Designate Plaintiffs Sayuri Inoa-Martinez, Leonel Feng, Josmael Pichardi Lede and David Valecillo as representatives of the NYLL Class;

155.  Declare Defendants' conduct complained of herein to be in violation of Plaintiffs' rights under the FLSA;

156.  Declare Defendants' conduct complained of herein to be in violation of Plaintiffs' rights under NYLL;

157.  Declare that Defendants' violations of the FLSA and NYLL were willful;

158.  Order Defendants to pay to Plaintiffs and members of the FLSA Collective all wages and tips owed under the FLSA;

159.  Order Defendants to pay to Plaintiffs and members of the NYLL Class all wages and tips owed under the NYLL;

160.  Award Plaintiffs and members of the FLSA Collective liquidated damages, statutory damages, and any other damages to which they are entitled under the FLSA;

161.  Award Plaintiffs and members of the NYLL Class liquidated damages, statutory damages, and any other damages to which they are entitled under the NYLL;

162.  Award the named Plaintiffs additional appropriate compensation in recognition for their service in representing and benefiting other workers in this litigation;

163.  Award the Plaintiffs Josmael Pichardi Lede and David Valecillo such legal and equitable relief as appropriate for their retaliatory terminations by Defendants, in violation of the FLSA and NYLL, including damages for lost compensation, mental anguish, emotional

distress, and liquidated damages;

164.    Award Plaintiffs reasonable attorneys' fees, costs and interest; and

165.    Award Plaintiffs such other legal and equitable relief as the Court deems appropriate.


RESPECTFULLY SUBMITTED,


_/s/ Robert McCreanor_


Robert McCreanor
Law Office of Robert D. McCreanor, P.L.L.C.
245 Saw Mill River Road
Suite 106
Hawthorne, NY 10532
(845) 202-1833
rmccreanor@rdmclegal.com

**ATTORNEYS FOR THE PLAINTIFFS**

Dated: November 2, 2022